No. 25-7504

# United States Court of Appeals for the Ninth Circuit

BLUE LAKE RANCHERIA, CHICKEN RANCH RANCHERIA OF ME-WUK
INDIANS, AND PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,
*Plaintiffs – Appellants,*

v.

KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC.,
ROBINHOOD DERIVATIVES LLC, AND DOES 1-20,
*Defendants – Appellees,*

———————————

Appeal from the U.S. District Court
for the Northern District of California
The Honorable Jacqueline Scott Corley (No. 2:25-cv-06162-JSC)

———————————

## APPELLEE ROBINHOOD'S ANSWERING BRIEF

———————————

Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Mark R. Conrad
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 343-7100

Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main Street
Oklahoma City, OK 73102
(512) 693-8350

*Counsel for Appellees Robinhood Markets, Inc., and
Robinhood Derivatives, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Robinhood Derivatives, LLC states that it is a wholly-owned subsidiary of Robinhood Markets, Inc. The Vanguard Group, Inc. owns 10% or more of Robinhood Markets, Inc.'s stock. There is no other publicly held corporation that owns 10% or more of Robinhood Derivatives, LLC's or Robinhood Markets, Inc.'s stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ..................................................... iii

JURISDICTIONAL STATEMENT ........................................... 1

STATEMENT OF THE ISSUES............................................... 1

STATUTORY PROVISIONS.................................................. 1

INTRODUCTION.............................................................. 2

STATEMENT OF THE CASE ................................................ 5

STANDARD OF REVIEW.................................................... 6

ARGUMENT ................................................................... 7

I.   PLAINTIFFS DID NOT DEMONSTRATE THAT THEY
     WOULD SUFFER IRREPARABLE HARM ABSENT AN
     INJUNCTION. ............................................................ 8

II.  ROBINHOOD DEMONSTRATED THAT THE BALANCE
     OF THE EQUITIES WEIGHS AGAINST AN INJUNCTION. ...... 10

III. THE PUBLIC INTEREST DISFAVORS AN INJUNCTION......... 14

CONCLUSION ............................................................... 16

CERTIFICATE OF SERVICE................................................ 18

# TABLE OF AUTHORITIES

**Cases** **Page**

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ............. 9

*Big Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085 (9th Cir. 1989) ................................................................................................. 7

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ........ 6

*Doe v. Horne*, 115 F.4th 1083 (9th Cir. 2024) ........................................ 6

*Evans v. Shoshone-Bannock Land Use Policy Comm'n*, 736 F.3d 1298 (9th Cir. 2013) ................................................................... 8

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) .............................................................. 14

*KalshiEX LLC v. Flaherty*, No. 25-cv-2152, 2025 WL 1218313 (D.N.J. Apr. 28, 2025), *appeal filed*, No. 25-1922 (3d Cir. filed May 15, 2025; argued Sept. 10, 2025) ................................................. 11

*KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026) ............................................................ 11

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (en banc) .......... 7

*Montana v. United States*, 450 U.S. 544 (1981) ....................................... 8

*N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026) ................................................................................. 14

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) ............ 7

*Robinhood Derivatives, LLC v. Dreitzer,* No. 2:25-cv-01541 (D. Nev. Nov. 26, 2025) ................................................................... 14

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .................................................................... 11

iii

*Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024 (D. Ariz. 1993) ............................................................................... 9

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ........................ 7

*Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000 (10th Cir. 2015) ............................................................. 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................ 6

**Statutes**

7 U.S.C. § 2(a)(1)(A) ....................................................................... 2, 15

25 U.S.C. § 2710(d)(1) .......................................................................... 15

25 U.S.C. § 2710(d)(7)(A)(ii) ................................................................ 1

28 U.S.C. § 1292 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1362 ...................................................................................... 1

31 U.S.C. § 5362(1)(E)(ii) ................................................................ 3, 15

31 U.S.C. § 5363 ...................................................................................... 3

Commodity Exchange Act ....................................................... 2, 3, 15, 16

Indian Gaming Regulatory Act ...................................................... *passim*

Lanham Act .................................................................................... 5, 6, 7

Racketeer Influenced and Corrupt Organizations Act ...................... 3, 5

Unlawful Internet Gambling Enforcement Act ....................... 2, 15, 16

## JURISDICTIONAL STATEMENT

Robinhood Derivatives, LLC and Robinhood Markets, Inc. (together, "Robinhood") agree with Plaintiffs' statement that the district court had jurisdiction under 28 U.S.C. §§ 1331 and 1362 and this Court has jurisdiction under 28 U.S.C. § 1292, but Robinhood disagrees with Plaintiffs' assertion that the district court had jurisdiction under 25 U.S.C. § 2710(d)(7)(A)(ii).

## STATEMENT OF THE ISSUES

1.      To the extent the Court reaches issues other than likelihood of success on the merits, whether the district court's denial of Plaintiffs' motion for preliminary injunction should be affirmed because Plaintiffs have failed to show that (i) they would suffer irreparable harm absent injunctive relief; (ii) such harm outweighs any harms Robinhood and Kalshi would suffer if an injunction were granted such that the balance of hardships and the equities weigh in favor of a preliminary injunction; and (iii) an injunction is in the public interest.

## STATUTORY PROVISIONS

The Addendum reproduces the pertinent statutory provisions.

## INTRODUCTION

Plaintiffs are three Indian Tribes that sought—and were denied—a preliminary injunction prohibiting KalshiEX LLC and Kalshi Inc. (together, "Kalshi") from offering on the Tribes' lands sports-related event contracts that trade on federally regulated derivatives exchanges. 1-RHSER-194 ¶ 2. Plaintiffs contend that these event contracts constitute sports gambling and, therefore, are unlawful on Indian land as a result of the Indian Gaming Regulatory Act ("IGRA"). In seeking that injunction, Plaintiffs have adopted an erroneous, overly expansive view of IGRA that would upend a carefully constructed federal regulatory scheme under the Commodity Exchange Act ("CEA").

Under the CEA's comprehensive federal regulatory scheme for derivatives trading, Kalshi is a Commodity Future Trading Commission ("CFTC")-registered designated contract market ("DCM") authorized to operate an exchange for event contract trading. The CEA provides that event contract trading on such DCMs is within the "exclusive jurisdiction" of the CFTC. 7 U.S.C. § 2(a)(1)(A). The Unlawful Internet Gambling Enforcement Act ("UIGEA")—which governs whether online gaming that crosses state or tribal borders is unlawful when the activity

2

is lawful in one location but not the other—expressly exempts CFTC-regulated transactions, like those at issue here, from its scope. *See* 31 U.S.C. §§ 5362(1)(E)(ii), 5363. In its order denying Plaintiffs' motion for a preliminary injunction (the "PI Order"), the district court thus correctly recognized that Plaintiffs' claims under IGRA are foreclosed by the CEA and its grant of "exclusive jurisdiction" over designated contract markets to the CFTC. 1-ER-13.

Robinhood is a CFTC-registered futures commission merchant ("FCM"), authorized to solicit and accept customer event contract orders and intermediate and route those orders for execution through DCMs, including Kalshi's. Plaintiffs have asserted claims against Robinhood under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), but did not seek a preliminary injunction against Robinhood and did not assert—and do not now assert—that RICO provides a basis for injunctive relief against Kalshi. Robinhood has a direct interest in this appeal because it would suffer substantial and irreparable harm to its federally authorized event contract business, in addition to the harm Kalshi would suffer, if this Court were to enjoin Kalshi from offering sports-related event contracts on Indian lands. Robinhood nonetheless agrees with the

ruling below and Kalshi's position on appeal that Plaintiffs cannot succeed on their IGRA claims.

Although Plaintiffs conspicuously fail in their opening brief on appeal to address any of the factors beyond likelihood of success on the merits, they nevertheless have asked this Court to both reverse the ruling below and enter the requested injunction. Should this Court reach the issues beyond likelihood of success, Robinhood submits that these remaining factors further support affirmance. *First*, Plaintiffs cannot show that they would suffer irreparable harm absent injunctive relief. *Second*, Plaintiffs cannot show that the balance of hardships and the equities weigh in favor of a preliminary injunction, as they fail to show that any alleged harm they suffer outweighs the substantial and irreparable harm Robinhood and Kalshi would suffer if an injunction were granted. *Third*, Plaintiffs have not demonstrated that an injunction would be in the public interest. Crucially, an injunction against Kalshi would undermine the federal regulatory scheme governing event contracts. The record before the district court on these factors provides additional reasons to affirm the district court's order.

## STATEMENT OF THE CASE

On July 22, 2025, Plaintiffs filed an action against Kalshi and Robinhood in the United States District Court for the Northern District of California, alleging violations of IGRA, Plaintiffs' tribal gaming ordinances, Plaintiffs' tribal sovereignty, the Lanham Act and RICO. 2-RHSER-230. Plaintiffs have since clarified that they assert only one cause of action, the civil RICO claim, against Robinhood. 1-RHSER-9 at n.1 (Plaintiffs' assertion they "only bring one claim, for civil RICO, against Robinhood").[1]

On September 4, 2025, Plaintiffs moved for a preliminary injunction against Kalshi for its alleged violations of IGRA and the Lanham Act. 1-RHSER-218–225. Kalshi opposed the motion. 1-RHSER-159. Robinhood also opposed, explaining how, even though Plaintiffs moved to preliminarily enjoin only Kalshi's offering of sports-related event contracts, Robinhood would also be harmed by an

---

[1] Despite their express waiver, Plaintiffs nonetheless incorrectly suggest throughout their brief that they have brought other claims against Robinhood. (*E.g.*, Br. at 10 (noting that "the Tribes pleaded claims against Kalshi and Robinhood alleging that their conduct violated the IGRA.").) Robinhood submits that Plaintiffs have expressly waived this claim (and all claims other than their civil RICO claim) as to Robinhood.

injunction against Kalshi. 1-RHSER-142. The district court denied Plaintiffs' motion, explaining that they were unlikely to succeed on the merits of their IGRA and Lanham Act claims. 1-ER-2–3.

Separately, while Plaintiffs' preliminary injunction motion was still pending, Kalshi and Robinhood each moved to dismiss the action. 1-RHSER-90; 1-RHSER-53. These motions remain pending in the district court.

## STANDARD OF REVIEW

To obtain a preliminary injunction, a plaintiff must establish that: (1) it is "likely to succeed on the merits"; (2) it is "likely to suffer irreparable harm" absent an injunction; (3) the "balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Doe v. Horne*, 115 F.4th 1083, 1098 (9th Cir. 2024). "Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors … ." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citation and quotation marks omitted).

This Court "review[s] the denial of a preliminary injunction for abuse of discretion." *Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (en banc). Legal conclusions are reviewed *de novo*, and factual findings are reviewed for clear error. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014).

This Court may "affirm [a district court's denial of a motion for a preliminary injunction] on any ground supported by the record." *Big Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085, 1088 (9th Cir. 1989); *see also United States v. California*, 921 F.3d 865, 893 (9th Cir. 2019).

## ARGUMENT

The PI Order should be affirmed because the district court correctly decided that Plaintiffs cannot show a likelihood of success on the merits on its IGRA and Lanham Act claims. Because Plaintiffs have waived these claims as to Robinhood, Robinhood does not separately address success on the merits and instead expressly incorporates the arguments in Kalshi's answering brief ("Kalshi Br."). *See* Kalshi Br. at 23-53.

While the district court did not reach these issues, the PI Order should also be affirmed because Plaintiffs cannot show that (1) they are

7

likely to suffer irreparable harm absent an injunction; (2) the balance of equities tips in their favor; or (3) an injunction is in the public interest.

## I. PLAINTIFFS DID NOT DEMONSTRATE THAT THEY WOULD SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

Plaintiffs have not established irreparable harm. Plaintiffs' assertion in the district court that infringement on their tribal sovereignty constitutes irreparable harm, 1-RHSER-217–218, fails here because Indian tribes have no sovereign powers over non-Indians such as Robinhood and Kalshi, except in narrow circumstances not present here. *See Montana v. United States*, 450 U.S. 544, 565 (1981) ("[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe."); *Evans v. Shoshone-Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1302 (9th Cir. 2013) ("[T]ribes do not, as a general matter, possess authority over non-Indians who come within their borders … ." (internal quotation omitted)). As a result, there is no infringement on tribal sovereignty.

In the district court, Plaintiffs relied on case law holding that Indian tribes had been irreparably harmed by unlawful deprivations of their jurisdictional authority. *See* 1-RHSER-217–218. Those cases are

8

inapposite, however, because they address intrusions on tribal sovereignty by states or their local subdivisions. *See id.* (citing *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000 (10th Cir. 2015) (suit against Utah and local governments); *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024 (D. Ariz. 1993) (suit seeking to enjoin Arizona state court proceedings)). Because Robinhood and Kalshi are private entities (whose conduct both occurs off tribal lands and is authorized by a federal regulatory scheme), there is no state intrusion on tribal sovereignty, and no sovereign interest is implicated.

The other harms Plaintiffs asserted in their PI motion in the district court are economic, and any causal link to Defendants' conduct is highly speculative, at best. These alleged harms, such as harm to Plaintiffs' "market positions," loss of "gaming revenues" and "divert[ed] profits," *see* 1-RHSER-220, 1-RHSER-222, are remediable by money damages. The availability of damages means these harms are, by definition, not irreparable. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."). Because Plaintiffs' alleged injuries are either impossible (as

9

no sovereign interest is implicated here) or compensable in money, and therefore not irreparable, Plaintiffs have failed to establish that they are entitled to injunctive relief.

## II.  ROBINHOOD DEMONSTRATED THAT THE BALANCE OF THE EQUITIES WEIGHS AGAINST AN INJUNCTION.

The balance of the equities weighs strongly against a preliminary injunction.  An order enjoining Kalshi "from offering on the Tribes' Indian lands any sports contracts," 1-RHSER-194 ¶ 2; *see* 1-RHSER-226, would cause substantial harm to both Kalshi and Robinhood.   *First*, if such an injunction issued, Kalshi indicated at the time that it may need to halt offering sports-related event contracts on its exchange nationwide for months while it determined whether it could develop a geofencing solution.  3-ER-298–301.   *Second*, once that was resolved, Kalshi might nevertheless have difficulty offering sports-related event contracts in parts of California outside Plaintiffs' lands, since geofencing around small parcels of Indian land may be infeasible.   3-ER-300–02.

Both scenarios would directly harm Robinhood.   As an FCM, Robinhood cannot facilitate customer orders for event contracts without access to a DCM, and Kalshi is the only DCM with which Robinhood has a      relationship     for     sports-related     event     contract     trading.

1-RHSER-140 ¶ 7.  If Kalshi halted offering sports-related event contracts nationwide, Robinhood would lose access to Kalshi's DCM and likely would be required to terminate users' orders, liquidate positions and indefinitely pause trading through Kalshi's DCM.  *Id.*  This loss of access would cause severe disruption to Robinhood's business, including loss of both customers and goodwill.  *Id.*; *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (recognizing that loss of "customers and accompanying goodwill" constitutes irreparable injury).  Indeed, in ongoing litigation over Kalshi's offering of sports-related event contracts, multiple federal courts have agreed that loss of customers and goodwill amounts to irreparable harm. *See KalshiEX LLC v. Orgel*, No. 3:26-cv-00034, 2026 WL 474869, at *11 (M.D. Tenn. Feb. 19, 2026) (finding irreparable harm where "Kalshi faces substantial expenses and reputational harm if it complies with [the state's] demands"); *KalshiEX LLC v. Flaherty*, No. 25-cv-2152, 2025 WL 1218313, at *6 (D.N.J. Apr. 28, 2025) (similar), *appeal filed*, No. 25-1922 (3d Cir. filed May 15, 2025; argued Sept. 10, 2025).  The same would be true specifically for customers in parts of California near Plaintiffs'

Indian lands, should Kalshi be unable to geofence around those lands with precision.

Without access to Kalshi's DCM, harm to Robinhood would be especially severe because of the volume of Robinhood customers' sports-related event contracts trading. 1-RHSER-140 ¶ 8. In California, Robinhood has tens of thousands of customers who have traded hundreds of millions of sports-related event contracts. *Id.* ¶ 9. The impact would also go beyond sports-related event contracts, as Robinhood's sports-related event contracts customers also frequently trade other products, such as stocks, options and crypto.[2] *Id.* ¶ 10. Reversing the PI Order would result in Robinhood losing direct event contract trading revenue and would subject the Robinhood companies to the risk of losing the goodwill of those customers and associated revenue across other products. *Id.*

It is also not currently possible for Robinhood to restrict trading on Indian lands simply by "geofencing," as Plaintiffs have suggested. *See*

---

[2] Robinhood customers trade stocks and options through Robinhood Financial LLC and Robinhood Securities, LLC and trade crypto through Robinhood Crypto, LLC.

2-RHSER-264 ¶ 136, 2-RHSER-272–73 ¶ 182.    Robinhood users may reside, place event contract orders, travel with open contracts and hold contracts to resolution, all in different locations.  2-ER-114.  As the record before the district court showed, Robinhood was not able to reliably identify whether a person was on Plaintiffs' lands.    2-ER-114 ¶ 6. Instead, Robinhood could restrict trading only by looking at a customer's home address or approximate location using the customer's IP address. *Id.*  ¶ 2.    Home addresses are self-reported, and do not provide information about a user's physical location in real time.  *Id.* ¶ 3.

Locating individuals by IP address relies on cell tower and other network communications data, which is only accurate within a radius of a few miles at best.  *Id.* ¶¶ 3-4.  IP address location is therefore unreliable for geolocating individuals on some Indian lands, given their relatively small size, irregular borders and proximity to other towns not on Indian lands.    For example, the Chicken Ranch Rancheria of the Me-Wuk Indians comprises 40 acres, within only a few miles of the town of Jamestown, California, which is home to several thousand residents. 4-ER-584; 1-RHSER-132; 1-RHSER-137; 1-RHSER-134–35.  As a result, Robinhood would not have been able to use IP location to block customers

on many Indian lands without forfeiting customers in or passing through surrounding areas. 2-ER-114 ¶¶ 6-7.[3]

## III.   THE PUBLIC INTEREST DISFAVORS AN INJUNCTION.

Granting an injunction would also be contrary to the public interest because it would risk dismantling the comprehensive federal regulatory regime for derivatives trading under which Kalshi and Robinhood lawfully operate. *See Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008) ("The public interest may be declared in the form of a statute." (internal citation omitted)); *see also* Amicus Brief of CFTC at 29, ECF No. 38-2, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026) (explaining that eroding the CFTC's "exclusive jurisdiction" over event contracts would "risk

---

[3] Because of Robinhood's current inability to geofence using GPS technology, in ongoing litigation in Nevada, Robinhood has agreed to stop offering new sports-related event contracts to users with Nevada addresses and has implemented an IP-based restriction for users in Nevada, which, as discussed above, is accurate within a radius of a few miles. Joint Notice of Agreement Concerning Enforcement Pending Appeal, ECF No. 91, *Robinhood Derivatives, LLC v. Dreitzer,* No. 2:25-cv-01541 (D. Nev. Nov. 26, 2025). Robinhood has appealed the Nevada order to this Court. *See Dreitzer*, No. 2:25-cv-01541 (D. Nev. Nov. 25, 2025), *appeal filed*, No. 25-7831 (9th Cir. filed Dec. 12, 2025). The lack of geofencing using GPS technology is more problematic for small geographical areas, such as Plaintiffs' Indian lands.

destabilizing the settled expectations upon which these markets depend, fostering uncertainty in an area where Congress sought uniformity and regulatory clarity").

Congress spoke clearly and unequivocally when it declared that the CFTC "shall have exclusive jurisdiction" over commodity futures and swaps trading on CFTC-designated exchanges. 7 U.S.C. § 2(a)(1)(A). IGRA applies to Class III gaming activities only when they occur "on Indian lands," 25 U.S.C. § 2710(d)(1), and Robinhood and Kalshi (non-tribal members) engage in no conduct on Indian lands. When Congress considered Internet-based gambling across state or tribal borders in UIGEA, Congress specifically exempted transactions on CFTC-designated exchanges. 31 U.S.C. § 5362(1)(E)(ii).

Consequently, the district court found that granting an injunction here would conflict with how Congress intended for the CEA, IGRA and UIGEA to interact. *See* 1-ER-10–11 (holding that "UIGEA should be interpreted to apply to cover interstate … gaming transactions via the internet, whereas IGRA … cover[s] Class III gaming activities that take place exclusively within Tribal lands" and that UIGEA expressly exempts the CFTC-regulated transactions at issue from its scope).

15

Upending the federal regulatory regime established under the CEA, as recognized by the UIGEA carve-out for transactions occurring on a DCM, by reversing the PI Order based on Plaintiffs' novel and meritless IGRA theory would be inconsistent with the public interest. *See* Kalshi Br. at 38-46.

## CONCLUSION

For the reasons set forth herein and in the Kalshi Brief, Robinhood respectfully requests that this Court affirm the PI Order.

DATED: March 9, 2026                    Respectfully submitted,

/s/ Antony L. Ryan
Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Mark R. Conrad
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 343-7100

Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main Street
Oklahoma City, OK 73102
(512) 693-8350

*Counsel for Appellees Robinhood
Markets, Inc., and Robinhood
Derivatives, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 9, 2026. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Mark R. Conrad*
Mark R. Conrad

**ADDENDUM:**

**Pertinent Statutes**

# TABLE OF CONTENTS

Provisions from the Commodity Exchange Act (as codified at 7 U.S.C.): ........................................................................ 1

    7 U.S.C. § 2(a)(1)(A) ........................................................ 1

Provisions from the Indian Gaming Regulatory Act (as codified at 25 U.S.C.): ................................................................ 2

    25 U.S.C. § 2710(d)(1) .................................................... 2

Provisions from the Unlawful Internet Gambling Enforcement Act (as codified at 31 U.S.C.): ................................ 2

    31 U.S.C. § 5362(1)(E)(ii) ............................................. 2

    31 U.S.C. § 5363 ............................................................ 3

## Provisions from the Commodity Exchange Act (as codified at 7 U.S.C.):

### 7 U.S.C. § 2(a)(1)(A)

(a) Jurisdiction of Commission; Commodity Futures Trading Commission

(1) Jurisdiction of Commission

(A) In general

The Commission shall have exclusive jurisdiction, except to the extent otherwise provided in the Wall Street Transparency and Accountability Act of 2010 (including an amendment made by that Act) and subparagraphs (C), (D), and (I) of this paragraph and subsections (c) and (f), with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions involving swaps or contracts of sale of a commodity for future delivery (including significant price discovery contracts), traded or executed on a contract market designated pursuant to section 7 of this title or a swap execution facility pursuant to section 7b–3 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title.  Except as hereinabove provided, nothing contained in this section shall (I) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (II) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws.  Nothing in this section shall supersede or limit

1

the jurisdiction conferred on courts of the United States or any State.

## Provisions from the Indian Gaming Regulatory Act (as codified at 25 U.S.C.):

### 25 U.S.C. § 2710(d)(1)

(d) Class III gaming activities; authorization; revocation; Tribal-State compact

(1) Class III gaming activities shall be lawful on Indian lands only if such activities are—

(A) authorized by an ordinance or resolution that—

(i) is adopted by the governing body of the Indian tribe having jurisdiction over such lands,

(ii) meets the requirements of subsection (b), and

(iii) is approved by the Chairman,

(B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and

(C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

## Provisions from the Unlawful Internet Gambling Enforcement Act (as codified at 31 U.S.C.):

### 31 U.S.C. § 5362(1)(E)(ii)

(1) Bet or wager.—The term "bet or wager"—

\* \* \*

(E) does not include—

2

(i) any activity governed by the securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934 for the purchase or sale of securities (as that term is defined in section 3(a)(10) of that Act);

(ii) any transaction conducted on or subject to the rules of a registered entity or exempt board of trade under the Commodity Exchange Act.

## 31 U.S.C. § 5363

No person engaged in the business of betting or wagering may knowingly accept, in connection with the participation of another person in unlawful Internet gambling—

(1) credit, or the proceeds of credit, extended to or on behalf of such other person (including credit extended through the use of a credit card);

(2) an electronic fund transfer, or funds transmitted by or through a money transmitting business, or the proceeds of an electronic fund transfer or money transmitting service, from or on behalf of such other person;

(3) any check, draft, or similar instrument which is drawn by or on behalf of such other person and is drawn on or payable at or through any financial institution; or

(4) the proceeds of any other form of financial transaction, as the Secretary and the Board of Governors of the Federal Reserve System may jointly prescribe by regulation, which involves a financial institution as a payor or financial intermediary on behalf of or for the benefit of such other person.